FILED

2008 Aug-29  PM 12:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **RICKY BLANKENSHIP,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **5:08-cv-0259-UWC** |
| **MICHAEL J. ASTRUE**, **Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Ricky Blankenship ("Plaintiff") brings this action for disability insurance benefits pursuant to Section 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").

The Court finds the Administrative Law Judge ("ALJ")'s decision, which became the decision of the Commissioner, is not supported by substantial evidence and failed to consider the combined effects of multiple impairments. Therefore, for the reasons elaborated herein, the Court will reverse the decision of the Commissioner. The case is due to be REMANDED to the Commissioner with instructions that Plaintiff be granted benefits.

1

## I.  Procedural History

Plaintiff filed an application for disability insurance benefits and supplemental security income on March 6, 2006, alleging disability beginning on July 27, 2005. (R. 28.)  Plaintiff was last insured for disability benefits on December 31, 2006.  (R. 99.) This application was denied by the State Agency on May 9, 2006.  (R. 28). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on August 1, 2006.  (R. 28.)  The ALJ denied benefits on June 2, 2007.  (R. 39.)  The Appeals Council declined review on December 19, 2007.  (R. 2.)  Having timely pursued and exhausted his administrative remedies, Plaintiff filed an action for judicial review in federal district court pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), on July 2, 2008.

## II.  Factual Background

At the time of the hearing, Plaintiff was forty-five years old and had an eighth grade education.  (R. 49.)

The vocational expert ("VE")classified that Plaintiff's past relevant work experience as a roofer as medium in exertional requirements and skill and at the heavy level of physical exertion.  (R. 38.)

Plaintiff alleges disability due to hip pain, back pain, anxiety, and depression. He has not performed substantial gainful activity since July 27, 2005, the onset date

2

of his disability.  (R. 97.)

According to the VE, if Plaintiff's testimony is credible, there are no jobs in the national economy which he can perform.[1]  (R. 23.)

### A. Plaintiff's Treatment History

The medical evidence of record shows extensive treatment for various physical and mental impairments since Plaintiff's onset date.  Plaintiff was admitted to Decatur General Hospital after he was involved in a motor vehicle accident on July 27, 2005. (R. 131.)  Plaintiff suffered multiple facial lacerations and a basilar neck fracture of the right hip.  (R. 131.)  In response, Dr. Dabney Y. Hofammann, an orthopedist, performed surgery for open reduction and internal fixation of the right hip with DHS screw and side plate.  (R. 134.)  Plaintiff tested positive for cannabinoids and cocaine and negative for alcohol when he was admitted for the motor vehicle accident.  (R. 131.)

Plaintiff saw Dr. William Pennington, a family doctor, multiple times between August 6, 2005, and August 26, 2005.  (R. 170.)  During these visits, Plaintiff

---

[1]If Plaintiff has to take frequent work breaks beyond those ordinarily allowed, that would preclude all work activity.  If, as a result of his pain, he would have difficulty with concentration so that he could concentrate for only a few minutes, that would preclude him from working.  If, because of his medical needs, he would have to periodically leave the work place or station, or sit or lie down during the work day, there are no jobs which he could perform.  (R. 23, 24.)

received prescription refills for Percocet,[2] Xanax[3], Soma, and Naprosyn.  (R. 170.) On August 15th, Plaintiff reported having a lot of pain and an examination revealed he had some tenderness inside his right thigh.  (R. 170.)

Plaintiff returned to Decatur General Hospital on October 3, 2005.  (R. 148.) There, Dr. Hofammann diagnosed Plaintiff with a nonunion femoral neck fracture and pain in the right hip.  Dr. Hofammann again performed surgery on Plaintiff.  This surgery was a bipolar hemiathroplasty of the right hip with removal of dynamic hip screw and sideplate. (R. 148.)  Plaintiff was prescribed Lorcet[4] and Xanax. (R. 148.)

Plaintiff's two week post-operative followup revealed the prosthesis to be in good alignment and no evidence of fracture or complicating features, but there was postoperative hip pain. (R. 175.)  Plaintiff was prescribed Vicodin.[5]  (R. 175.)

Plaintiff saw Dr. Turney at Central Northern Alabama Health Services on October 26, 2005.  Dr. Turney prescribed  Xanax after Plaintiff stated that he was very depressed with a loss of appetite.  (R. 191.)

Plaintiff returned to Dr. Hofammann on November 14, 2005, and December 12,

---

[2]Percocet is prescribed for moderate to severe pain.

[3]Xanax is prescribed for anxiety disorders and panic attacks.

[4]Lorcet is prescribed for moderate to severe pain.

[5]Vicodin is prescribed for moderate to severe pain.

2005. Dr. Hofammann noted that the prosthesis was in good alignment. Plaintiff had been walking on his hip, a push/pull did not seem to exacerbate his discomfort, x-rays did not show any complicating features, and pressure on the hip with distraction did not elicit any claims of pain, but if there was no distraction there were claims of pain. (R. 174.) In addition, Dr. Hofammann opined that the bipolar cup looked good and saw no evidence of loosening. (R. 174.)

An x-ray of December 26th showed that there was no fracture but that the bony structures in the knee appeared heterogeneously osteopenic. (R. 183.)

Plaintiff visited Dr. Turney five more times between November 2005 and March 2006. On November 28th, Plaintiff told Dr. Turney that he was getting better. Nonetheless, Dr. Turney prescribed him Lorcet. (R. 190.) On December 21st, Plaintiff informed Dr. Turney that his pain medications were not working and asked for Soma. (R. 189.) On January 19th, Dr. Turney diagnosed Plaintiff with chronic obstructive pulmonary disease (COPD) and right hip pain. (R. 188.)

On his March 14th visit to Dr. Turney, Plaintiff reported to Dr. Turney that he had not been walking for seven months and that he needed therapy. (R. 187.) Dr. Turney ordered an MRI and authorized the refilling of Plaintiff's prescriptions for Flexinal and Ultram.[6] (R. 187.)

---

[6]Ultram is prescribed for moderate to moderately severe pain.

The March 16, 2006, MRI revealed that there were bulging disks at L4/5 and L5/S1, causing neural foraminal narrowing and mild spinal stenosis at L4/5. (R. 181-183.)

On March 20th, Dr. Turney prescribed Lorcet Plus to Plaintiff. (R. 186.)

Plaintiff saw a new Internist, Dr. Royce, on. August 7, 2006. Dr. Royce's assessment was that Plaintiff had chronic lower back and right hip pain. (R. 225.) Dr. Royce's diagnoses of August 14 and September 13, 2006, were lower back pain, decreased range of motion in the right leg, anxiety, and acute depression. (R. 224.)

Dr. Royce prescribed Soma, Lortab, and Klonopin, and physical therapy for Plaintiff. (R. 224.)

Plaintiff was hospitalized for six days at Hill Hospital, beginning on August 22, 2006. He was treated by Dr. Michael Gordon. Dr. Gordon's discharge diagnosis of Plaintiff was polysubstance abuse,[7] lumbosacral syndrome (back pain), osteoarthritis, degenerative joint disease, muscle spasms, major depression, and nausea and vomiting. (R. 213.)

Plaintiff's two visits in the late summer (August-September) of 2006 resulted in a diagnosis of musculoskeletal pain of the hip and knee, low back pain, depression,

---

[7]Plaintiff tested positive for marijuana and negative for cocaine. (R. 219.)

anxiety, and hypertension.  (R. 227-228.)  Dr. Turney prescribed Soma, Xanax, and Lorcet Plus.  (R. 228.)

Dr. Turney found in September 2006 that Plaintiff is "totally disabled."  (R. 227-228.)

Plaintiff was admitted to Decatur General West on March 23, 2007, for suicidal ideation.  Upon admittance, Plaintiff tested positive for cocaine and marijuana.  Dr. Ehtsham Haq, a psychiatrist, found that Plaintiff was at risk of harming himself and others and had poor judgment and insight.  (R. 232.)  Dr. Haq's diagnoses were: adjustment disorder with depressed mood, polysubstance abuse, and a Global Assessment of Function (GAF) of 25.  (R. 232-233.)  Dr. Haq's plan was to admit Plaintiff to the hospital, begin suicidal observation, and administer Skelaxin, Remeron, Neurontin, and Naproxen.  (R. 233.)

Dr. Fredette, a psychiatrist who had treated Plaintiff in the past, also prescribed these drugs along with Seroquel and Lunesta.  (R. 230-232.)  He found that Plaintiff suffers from  depression, polysubstance abuse, antisocial personality features versus disorder, pain issues, employment, financial difficulties, family conflicts, marital discord, separation, and a Global Assessment of Functioning of 25 on admission and 50 on discharge.  (R. 230.)

Plaintiff visited Valley Internal Medicine Clinic three times in April and May

7

2007.  Dr. Ahmad Shiktholth found that Plaintiff had an abnormal range of motion of the lumbar spine due to pain, and he diagnosed Plaintiff conditions as right sacroillitis (a type of low back pain), right hip osteoarthritis (hip pain from "wear and tear") and lumbar facet syndrome (low back pain).  (R. 238.)  Dr. Akram Haggag, noted that Plaintiff was limping, had abnormal lumbar lordosis, that his right lower extremity was shorter than the left with external rotation, tenderness, and abnormal range of motion of lumbar spine due to pain.  (R. 236.)  Also, Dr. Haggag noted that Plaintiff had an epidural injection four months ago, but that it was only marginally effective.  (R. 235.)

At the May 3, 2007, hearing before ALJ Randall C. Stout, Plaintiff testified that the only time he has been pain free since the July 27, 2005, accident was when he was sedated for surgery; that he spends six hours a day in pain management; that he is able to ambulate only with the aid of crutches or a cane; and that he is able to sleep only three to four hours a night.  (R. 44, 52, 55-56.)

Plaintiff testified that he had used cocaine roughly three times since the motor vehicle accident.  The last time he used drugs was in March 2007.  He had never lost a job because of drugs.  (R. 51.)

8

## B. The ALJ's Decision

The ALJ rendered an adverse decision on Plaintiff's claim on June 2, 2007. (R. 30.)  He found that the Plaintiff had the following severe impairments: status-post fracture of the right femoral neck with subsequent right hip replacement and bulging disks at L4-5 and L5-S1 with mild spinal stenosis at L4-5, depression, and history of polysubstance abuse.  (R. 30.)

The ALJ also found that the Plaintiff was unable to perform past relevant work.

But the ALJ found that although the Plaintiff has the residual functional capacity to perform less than a full range of sedentary work, there were available jobs that Plaintiff could perform.  (R. 34, 37-38.)

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms.

Nonetheless, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible.[8]  (R. 36.)

The ALJ discounted Plaintiff's claims of pain.[9]

---

[8]The ALJ based this credibility finding on his conclusion that Plaintiff's treatment since his last surgery was essentially routine and conservative in nature; and that the surgery had been generally successful in controlling his symptoms.

[9]The ALJ relied on Dr. Hofammann's note that claimant's pain may be more subjective than objective; and he viewed Plaintiff's request for pain medications as evidence that he "continued to seek medications rather than medical treatment." (R. 36.)  The ALJ concluded that the March 2006 MRI discredited Plaintiff's claim that back pain limited his ability to walk only a

The ALJ discounted the opinion of Plaintiff's treating physician, Dr. Turney.[10]

Lastly, the ALJ discounted Plaintiff's claims of mental incapacities.[11]

### III. Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits. *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). The district court's scope of review is limited to determining whether substantial evidence supports the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, but less than a preponderance: it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Bloodsworth* v. *Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotation marks omitted).

---

few feet because the MRI only showed bulging disks, neural foraminal narrowing, and mild stenosis. (R. 37.)

[10]The ALJ found that Dr. Tunney's opinion that Plaintiff is disabled was "only a general comment and was not specific in regarding to any definite limitation the claimant might have, and . . . that it pertained only to the [Plaintiff]'s past relevant work as a roofer." (R. 37.) The ALJ also wrote that Dr. Turney's disability opinion was not consistent with the rest of his findings. (*Id.*)

[11]The ALJ found that Plaintiff only once sought treatment from a mental health professional; that Plaintiff "minimized his use of cocaine and cannabinoids; and that Plaintiff slept well during a hospitalization despite claims of sleeping problems. (R. 37.) He also relied on the medical note that Plaintiff's "affect generally [did] not appear to be terribly anxious" during his hospitalization for suicidal ideation. (*Id.*)

Additionally, the Court must determine whether proper legal standards were applied. *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)). "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability claims. 20 C.F.R. § 404.1520 (1983). The first consideration is whether the claimant is working. If the claimant is working, she is not disabled. If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe impairment. If the claimant does not suffer from a severe impairment, she is not disabled. If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1520(a). *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985). If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no further inquiry is necessary.

When a claimant's "severe" impairment does not fall within a Listing, but

nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments.  This evaluation must give consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors.  20 C.F.R. § 404.1512.

Pain alone can be disabling.  When a claimant claims disability based solely on pain, a standard is utilized in assessing the credibility of his testimony.  The claimant must establish evidence of an underlying impairment <u>and</u> either: (1) objective medical evidence to confirm the severity of pain alleged, or (2) a finding that the impairment is of such a severity that it can be reasonably expected to cause the pain alleged.  *See, e.g.*, *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992) (emphasis added).

Additionally, pursuant to 20 C.F.R. § 404.1523, the ALJ is required to consider the disabling effect of multiple impairments:

> In determining whether your physical or mental impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairments if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find

that you have a medically severe combination of impairments, we will determine that you are not disabled.

Social Security proceedings are inquisitorial rather than adversarial; and the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 120 (2000). Indeed, the ALJ has a basic duty to fully develop the record. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981)

### IV.  Analysis

The ALJ's decision denying benefits must be reversed for a multiplicity of reasons.

First, the ALJ reversibly erred by failing to give the opinion of Plaintiff's treating physician the deference to which it is entitled, entirely without any good cause.  Contrary to the finding of the ALJ, Dr. Turney's opinion that Plaintiff is totally disabled is not simply a "general comment,"[12] it is an opinion based on his observations, treatment, and medical records covering ten visits over a year. The ALJ's finding that Dr. Turney's opinion is inconsistent with his other findings is simply and abundantly unsupported by the record.  On this ground alone, the decision must be reversed.

---

[12]See, n.10.

Next, the ALJ utterly disregarded the pain standard.  He found that Plaintiff's medically determinable impairments could reasonably be expected to produce the disabling pain which Plaintiff testified about; and the medical records, treatments, and prescribed medications for severe pain strongly support that finding.  Plaintiff thus satisfied both prongs of the pain standard; and a disability finding is compelled on that ground alone.

Moreover, the finding of no disability is unsupported by the evidence.  For example, the ALJ found that Plaintiff had never sought treatment by any mental health professional until he was hospitalized in March 2007.  Yet, the March 2007 hospital records reflect that Plaintiff had been treated for mental problems on three occasions prior to March 2007.  (R. 230, 232.)  The ALJ relied on a medical note that Plaintiff did not appear to be anxious during his hospitalization for his mental problems;[13] but the very reason for the hospitalization was his suicidal ideation – and the psychiatrist subsequently diagnosed Plaintiff with an adjustment disorder with depressed mood, posing a moderate to severe risk of harming himself or other.  In finding that Plaintiff's mental impairments are not severe, the ALJ ignored Dr. Royce's diagnosis of acute depression,[14] Dr. Gordon's diagnosis of major

[13]See, n. 11.

[14]R. 223.

depression,[15] as well as the opinions and observations of four other physicians who considered Plaintiff's mental state to be sufficiently serious as to require treatment and prescribed medications.[16]

Finally, the ALJ failed to consider the combined effect of all of Plaintiff's impairments.  While the ALJ found that Plaintiff's severe impairments include  1) status-post fracture of the right femoral neck with subsequent right hip replacement, 2) bulging disks at L4-5 and L5-S1 with mild spinal stenosis at L4-5, and 3) depression, his findings do not mention a consideration of the combined effects of these severe impairments.  The law requires him to do so.  20 C.F.R. § 404.1523.

Conclusion

For each and all of these reasons, the ALJ's decision must be reversed and the Commissioner instructed to grant Plaintiff's application for disability benefits..

It will be done by separate order.

Done the 29th day of August, 2008.

U.W. Clemon
United States District Judge

---

[15]R. 214.

[16]These include Drs. Turney, Fredette, Haq, and Pennington.